and the court. Plaintiff Iowa CCI protests in the lone tradition of non-violent sit-ins. It physically holds space over an owner's objections. Until Iowa Code 727.8a was passed, it also recorded those protests. It recorded the protests to document the protesters' statements, and then turned that documentation into advocacy material such as things to post on social media, which renders those recordings protected speech. In this narrow First Amendment challenge, ICCI seeks to protect its right to record when its presence is objected to, but it's recording on property that's otherwise open to the general public, and there's no prohibition on recording. In those circumstances, Iowa has failed to meet its burden to pass intermediate scrutiny and has failed to do so in two ways. You're talking too fast, and I thought we were talking about standing. I don't think we're talking about standing, Your Honor, because I think standing's been resolved in this case, but I'm happy to address it if you have a question. No, I thought that's where you were starting. We think standing was resolved by Judge Grass's opinion previously. So this case previously was up on a facial challenge. That challenge held that there's standing, as is true for most First Amendment cases, when a plaintiff says they have previously engaged in the regulated conduct, wishes to again, and is not doing so because of the statute. And that's explicitly what's in the record here. That's also, I will note, what this Court's opinion on Animal Legal Defense Fund v. Vaught holds. I wasn't urging you to argue it. I guess it's the other side. I mean, our view of it standing put- You're all backward about who's arguing what and why. We are not arguing standing. We believe standing's clear here. We obviously have to show standing. We think it's clear here. We think it's clear under this Court's well-settled law, as well as law from other circuits. We also think it's clear that this case is ripe under a well-settled law, including the prior decision in this case and the decision in Vaught, which tells that if there's standing, there's ripeness. So then we get to the question of whether there's a First Amendment claim and we pass. And this case previously came up on a facial challenge. We were remanded back down for an as-applied challenge. We now bring that as-applied challenge. There's two questions then, whether the First Amendment applies. I'm happy to address that, but in our view, again, that's very clear under this Court's settled law, particularly the Ness decision and the Telescope decision. So, Counsel, assuming for purposes of argument that the First Amendment does apply, let me ask you a question that I think is somewhat foundational to your argument. So when a property owner objects to ICCI's presence and asks them to leave, why isn't that necessarily also an objection to them recording on their property? Doesn't the greater include the lesser? No, Your Honor, that there are specific ways to object to recording. There are things, and this came up in the prior facial challenge, but there are ways under Iowa law in which you object to recording. You post no photography signs. You tell them to leave. But if you're on my property and I say I want you to leave right now, why isn't that also an objection to you recording? Well, so two answers. Just to take your hypothetical as it is, Your Honor. So I think that could be an objection to recording. That's not the injunction we're asking for. So on your specific hypothetical, that would turn on the facts. Was the objection to the presence or was the objection to the recording? And if it was to both, the injunction that we're asking for wouldn't protect it. It's possible under your hypothetical, because it says just get out, we don't know the answer. And that's a fact question that the injunction we're seeking may not be, may not apply to. And this is the important second part, which modifies your hypothetical slightly, which is the record here doesn't evidence that at all. It evidences something much more specific. I'll point you to App 68, the Mason Declaration 7 and 8, where he says this is the Iowa CCI member who has been arrested for trespass for protest. And he says he was arrested for blocking the entrance. Not just get out, not just we don't want you here. Your presence, what you're physically doing is what's the problem. And that's, I also point you to App 51, the Whelan Declaration, paragraphs 15 and 17. That they record involving, the advocacy involves, quote, with actual or apparent authority ask ICCI members to leave. Not to stop recording, but that there, it's their continued presence that is the objection. She says that a couple of times. That's also the history of nonviolence. How can they continue to record there if they can't be present there? They can't continue to record if they can't be present. But the issue here is that there's a heightened penalty for the speech. And that's chilling the speech. So certainly, if you physically cannot be present, you can't record. I don't disagree about that metaphysical point. But the issue here is that Iowa has chosen to. It's not entirely metaphysical. It's very concrete. They're certainly not property owners. I wasn't meaning to belittle the point at all, Your Honor. I was trying to say that the difference here is not about whether they physically could record, but whether the enhanced penalty for recording would apply. And that's the issue before this court. And what, again, this court. We don't have that in a ripe situation. I believe you do, Your Honor, for two reasons. Where? Who is in the situation that you're now talking about? That's exactly what is alleged in these declarations, Your Honor. Well, they aren't concrete. They don't make something ripe. I believe they do, Your Honor, in two ways. So isn't your speech chilled? And isn't that enough for ripeness? That's exactly right. So that's where I was going. That the prior conduct establishes concreteness. I point you to Initiative and Referendum Institute, which is the en banc Tenth Circuit case, that talks about that, as well as this court's prior decisions, in Judge Gratz's opinion in this case, and the Vought decision, which say that prior conduct establishes concreteness of chill. And what those cases hold is that also establishes ripeness. But if you look at the defendant's cases, what they say about ripeness is that when there isn't a concrete chill, a case isn't ripe. But there has to be a concrete chill here because we've alleged prior conduct. That's exactly what has occurred. There's no more specificity that's required. And Judge Loken, just on the facts, I will point out, no one's actually said any additional facts are necessary. What we have here is a record that shows there are properties where your presence is objected to. Those properties are open to others. No one disagrees about Iowa law here. But in order for there to be a trespass, you have to object to a person being there. Either the recording, which there are, you can object under Iowa law to the recording specifically. They're not public streets and roadways. They're private property that can be opened by the property owner to invitees. That's true, but we're talking about property that's not just open to invitees. That's, we've narrowed our challenge to property in which you are otherwise allowed to go, and you're otherwise allowed to record. So, Judge Grant, so you're- Like a store, you would be an invitee if you go in there to shop. That's, you would be a invitee with no limits on your invitee status. If you wanted to shoplift, you'd trespass. If you wanted to shoplift, I'm not actually sure under Iowa law whether you'd be guilty of trespass or not, but that's, you would be entitled to record in those settings. So this, Judge Gratz, goes to your point. Someone, a bystander in all these circumstances, would not be trespassing if they were recording because there's no prohibition. I can record in grocery stores in Iowa absent a sign that says I can't record, and we're not talking about property in which the invite has been limited based on either my presence or my recording. What it's been limited on is my continued protest, and that's the only thing that is happening here. And that's why, again, there has to be, this is the government's burden to demonstrate this nexus. And so, Judge Loken, even if you disagree with me that this is theoretically right under the law, the other problem here is there's no evidence in the record that this type of speech has ever produced this type of harm. Under the Supreme Court's holding in TikTok, under this court's holdings in traditionalist, the KKK case. Evidence, the state has to come forward with evidence that there was, this speech produced this type of harm. There's nothing in the record that suggests that. This is the Second Circuit's holding in Cornelino, which says that you can't come up with post-hot rationalizations. The Second Circuit case, it's Cornelio. I can find the spelling for you, Your Honor. I just don't have it in front of me. Counsel, can you square for me your argument that they needed to produce more evidence with the fact that this is a motion to dismiss? Sure. So the way I square that is this is a somewhat confusing procedural posture, but the answer is that Celotex in Rule 56C. So they moved to dismiss. We moved for summary judgment because it's their burden. They had the obligation to produce some evidence under Celotex. They didn't produce anything. What ended up happening was the district court cited two newspaper articles that were in a footnote to an earlier brief that the government produced. Those two newspaper articles, I invite you to read if you can. They're behind a paywall because the government's never produced them. And what they say is that there are concerns about biosecurity on farms from people who enter. That has nothing to do with recording. And even if all that weren't true, you credit everything the government says about those articles. Those articles aren't in the legislative record. Under McClellan, under the Fourth Circuit decision in PETA, under the Fourth Circuit decision in Middleton, the Third Circuit decision in Bruni, even the Second Circuit decision in Cornelio, you need evidence in the record. What Cornelio says is post hoc evidence is not sufficient. The government actually had to do something to show that there was a harm from this speech, and it didn't. And so I can concede, Judge Loca, in your point that there could be a private property interest. I could even concede that maybe in most instances there were. They have to show that there's, that this type of speech actually produces this type of harm. And there's nothing that shows that any property owner has ever objected to recordings as an invasion like this on otherwise open property as an invasion of privacy or property interests. But isn't it necessarily encapsulated by the fact that the property owner has to ask them to leave before this even kicks in? They have to be a trespasser, so they have to be asked to leave. And isn't recording there encompassed in that? No, Your Honor, and again, a couple of different answers. One is that we're talking about property where other people had every right to record, so you have to withdraw that right, too. And to Judge Gratz's hypothetical, it's possible. But it's encompassed. When I ask you to leave, you can't do anything there, including recording. I disagree, Your Honor, because it's about why you ask. If you just say leave, I agree with you, there's a fact question there. And this is the call that I had earlier. But what we have in the record here is actual requests. The actual record shows things like stop blocking the entrance. That's the actual request here. That isn't remove yourself and never come back. It's your physical presence here is objected to. And that is the tradition in which these people protest. And this is no different than, say, lunch counter sit-ins. You know, if someone goes into a grocery store with a camera or a video recorder and spends an hour recording everybody going up and down the aisles and what they're buying, now I think at some point the store owner is going to say, you know, you stop that. You're harassing my customers. You're hurting my business. Get out of here. So in that situation, someone who otherwise could bring a camera in the store and take an isolated picture and so forth gets asked, stop it. And if they don't, they're going to be trespassing or whatever the tort might be. So that's the parallel that I see with Judge Grunder's case. Question. When they say, when they've already said, get off my property. So two answers. We are not talking about the situation when they say stop recording. But the second answer is, if you call them that way, you'll be splitting with. You said they presented no evidence of a property owner who objected to recording. That's, yes. But we've also presented a narrow injunction request. When it wouldn't happen until you're already recording. Again, I've given you an example in the record, 68 Mason declaration blocking the entrance. But I do just, before I run out of time, and I want to try to reserve as little time as possible for rebuttal, is that your position is at tension with the Fourth Circuit holding in PETA, the Seventh Circuit holding in Alvarez. That goes right to the core here. I couldn't stand being in tension with the Fourth Circuit. I appreciate that, Your Honor. I just wanted to point out there are courts out there that have very explicitly held that case has been criticized.  I'll reserve my remaining seconds for rebuttal. Thank you. May it please the court, counsel, and can everyone up there hear me okay? Ms. Stolzi. Yes. So I would like to start with the nature of ICCI's desired conduct, because that goes to both the standing issue and the intermediate scrutiny issue. Now, we believe that ICCI's proposed conduct is less than clear from the record. If you look at the complaint, if you look at- I'm sorry, you're looking down and talking fast, and I'm missing it. My apologies, Your Honor. You can raise the mic, get it closer, raise the podium, or lower the podium. Is that better? Yeah, if you speak into it. All right, of course, Your Honor. So as I said, we'll start with the ICCI's specific conduct, in part because this is an as-applied challenge, and it goes both to the standing issue and the intermediate scrutiny issue. Now, ICCI, in its complaint and in Ms. Whelan's declaration, identifies nearly a dozen different types of properties in which they would like to protest. But ultimately, the state believes that they fall into two different categories. One is property where ICI- You would help me if you started with the issue that we spent the time with opposing counsel. Of course, and that- If you have to go to the back of your outline, I'm sorry. No, that is perfectly all right. And just to make sure I'm understanding, that's dealing with the property owner's consent to be on the property, and whether there's consent to record and that- Whether this is protected. Yeah, we would argue it is not due to the trespass that is taking place. And the relevant inquiry here, as directed to us under 727.8a, is whether a person's committing trespass. Under Iowa Code 716.7, and that delineates various conditions, including when a property owner withdraws consent to remain on the property. And once that occurs, as Judge Grass had got at with his questions, that the ability to do anything on the property ceases. The objection doesn't need to be specific to recording. That's not how trespass law works. Once the property owner withdraws the invitation to remain present on the property, that becomes the end of the inquiry there. And the subsequent conduct doesn't change that analysis. Once there's been that criminal trespass, that is the end of the inquiry there. And that encompasses a lot of the locations at which ICCI seeks to protest. Cases where there is an objection to their presence, that makes it a trespass and puts it squarely under 727, and satisfies intermediate scrutiny as the prior panel laid out in its decision. In particular, this panel had said that where we have individuals who are intentionally trespassing, that puts the conduct squarely within the plainly legitimate sweep of the law. And that's what we're looking at here. Counsel, are there some places where Iowa's interest in protecting property rights and privacy rights less than in other places? Are there locations where your interests are less than in other locations? I would certainly- They're talking about areas that are available to the public, open to the public. I would say an area, first, I used to go back to the question you initially asked. Whether there might be additional concerns with kind of some of these invasions, such as privacy, biosecurity, that may be the case. That doesn't make the private property interest any less, and that's kind of well situated within kind of the Anglo-American tradition. We saw that relatively recently reaffirmed in the Supreme Court's Cedar Point Nursery decision. The right to exclude is an essential stick in the bundle of rights. What decision? That was the Cedar Point Nursery v. Haseed decision, and that is cited in our brief. I can get the record cite. No, that's right. Okay. And as far as this notion that there are certain places that are open to the public, I would certainly push back on the notion that open to the public means the same thing as public property. Certainly, to the extent something is open to the public, like say a small business owner's business, that's subject to the business owner's invitation. And longstanding Iowa trespass law gives the property or the right to withdraw that invitation for any reason absent something that runs afoul of, say, a civil rights public accommodation law or some other prohibition on withdrawing access. And then once that occurs, this court recognized in the prior panel decision that that trespass is a legally cognizable injury that harms both property and privacy interests of the owners. What's your answer to the chilling argument? We would argue, we point this out in the brief, that there are ample other avenues of speech in this instance. Those who engage in civil disobedience aren't exempt from the law, certainly not a generally applicable law such as trespass. There can be recording from public sidewalks. There can be recordings by members who are not participating in the protest, who aren't asked to leave, especially if recording is allowed in some of these locations. There are all sorts of other manners of protest completely, and this is supported by the Supreme Court's decision in Frisbee v. Schultz, which talked about it's constitutional to limit a protest outside someone's home, because it leaves other avenues such as protests in the neighborhood, leafleting, other types of speech open. So individuals don't get to have unlimited speech rights, particularly when they're violating a generally applicable criminal law. Would it matter if they were there to try to record human trafficking violations, or the discharge of waste into streams, or some violation of law? I guess the first question would be whether that's occurring on public property or not. The notion that we're recording traffic violations would suggest that public- Human trafficking. I would say there is still kind of the issue with the trespassing law. To the extent we use public interest as the metric, that opens up sort of all sorts of privacy violations and essentially invalidates trespass law, because you can make the argument that recording in a politician's bedroom is in the public interest, because he might be having an affair and might not be fit for office. Or even recording inside a child's bedroom to see if there's abuse taking place. And we recognize that just because something is in the public interest, that doesn't mean it's protected speech. And that is why Ness v Bloomington doesn't go as far as the appellants argue that it does. Now, as far as the evidentiary record issue that had come up, while ICCI references other courts talking about this evidentiary burden, it's not one that this court has applied. It's squarely foreclosed by cases like Doe v City of Minneapolis, Jake's Limited v Coates, Missouri Republican Party v Lamb, all of those are cited in the brief. That some notion of subjective legislative intent doesn't invalidate an otherwise constitutional statute that's constitutional on its face, as the statute was here as the prior panel had held. And here, the record supports this sort of, not only kind of common sense notion that this is a commonly known issue in Iowa, that's both in the amicus brief and in the state's brief. And, sorry here, and that can be sufficient under this court's precedent. And to the extent that ICCI thought, as the ones who filed summary judgment, that there was something else needed as far as establishing their claim to summary judgment. Discovery was available at this stage. That was set forth very cleanly in the joint stipulation. I believe that is paragraph one at, let's see, pages 35 and 36, that's docket number 39, that there was discovery available. But the state certainly met its sellotext burden of production in that under this court's precedent, there really isn't one short of assuring that it's not completely arbitrary or capricious, there's no support for it whatsoever. And there's certainly statements that were in the legislative record that was also stipulated to on summary judgment. That's also at that same docket entry, so I believe page 34, where you've got the various legislative debates, including a statement by one state senator. This is discussed in the amicus brief at page eight. It talks about the importance of this law to protect private property owners' rights. This also defeats any sort of animus argument, is that being the only motivation behind this law. There's also discussion of things like trade secrets. Was it just targeted at some of these factory farms, these agriculture facilities? And this is evidence, too, if you look at just the text of the law, which doesn't specify the reason for the trespass. Or even necessarily govern whether something is speech, could encompass any sort of transmission of electronic data. And I would point out that this same legislative record was before the court in the prior panel. What, is there any experience? So how does one defend the question that you are committing a trespass under this statute if it's in an enforcement proceeding? So it would depend on certainly which of the provisions of 17- Well, all the things we've been talking about, the exceptions to trespass. So if we're looking at, say, if one shows- Pardon? I apologize. One could show owner consent to be on the property. The person that was asking them to leave perhaps didn't have authority to ask them to leave. I was recording human trafficking. I guess I would need to know more about sort of the details of what happens. No, I want to know procedurally, is that defense available? Do we even know? I don't think we've reached that issue because the close- Has there been any enforcement? At least not against- On the recording issue. At least not against ICCI that I'm aware of. And I don't, I'm not aware of anything that's- This was remanded for as applied and we're not, all we're hearing is facial arguments. Well, I think that's the problem with the challenge that ICCI alleged here. They've essentially repackaged their facial claim and brought it back to this court. They said it's not narrowly tailored. One way you would narrowly tailor it is to make clear that anyone subject to enforcement can say, wait a minute, that's not a legitimate trespass under Iowa law or the Constitution. Whether something's a legitimate trespass would already be a defense because one of the elements of- Would or would not? Would. Because 7- And how do we know, are there regs? There would, that's, we know that in the text of 7278A, that specifically says one of the elements of- That's what I'm looking at, a person committing a trespass as defined. Correct, and if someone isn't committing a trespass as defined in Iowa's trespass statute, that's- I read that, that doesn't tell me. Well, since trespass- I think that, I think maybe 0.7 is the one that's got what, 35 subsets, I can't remember. Well, 716.7 is Iowa's general trespass statute. So certainly if, since trespass under Iowa's trespass law is an element of 727.8A, it's generally failure to satisfy an element of a crime is a defense to that crime. There doesn't need to be sort of a specific specification to that. If someone can prove that they don't satisfy, the state can't prove an element of the crime, then that is certainly a defense to that crime. So again, we believe, the state believes, based on this court- So there aren't separate regs, there's just that statute? There are two statutes. So there's 727.8A, which is- I'm looking at 0.8A. Correct. And then it refers to, you see, section 716.7. I read that. I don't have it with me, but it's not self-executing. Other provisions within 716 are, that's, you know, chapter- There are no regs, is that correct? That was the question. This is a criminal statute, not, you know, the administrative- There's policy, there are things that are like regulations in the federal criminal law code. There aren't any that I am aware of. That doesn't mean there aren't. But courts have been applying 716.7 in Iowa since its inception, I think, at least for 50 years. So Iowa courts are well-versed in how that would apply in the defenses that are available to trespass in Iowa law. And with that, I see my time has expired. So unless there are any other questions, we'd ask the court to affirm. Mr. Muraskin, I'm curious, what makes this an as-applied challenge? Why isn't this just a repackaged facial challenge? It's an as-applied challenge because we're not asking for the injunction to say the law isn't constitutional. We're asking for a narrowly tailored injunction to ICCI's conduct. And that's what the Supreme Court said in Citizens United, is that's what distinguishes as-applied from facial challenges is the remedy, not the nature of the chill or anything like that. And we've narrowly tailored the challenge to instances where others could record, but we're being asked to remove. If I could just make two brief points in rebuttal. One is just a quote for you the Supreme Court's holding in TikTok, page 78 of that decision. Under the First Amendment, where you're restricting speech, quote, So it must be that, quote, Pointing to a website that says somewhere there might be something, which they didn't even do in their opposition to the motion for summary judgment, does not meet the Solitec standard for substantial evidence. The other point is what the government's essentially arguing is if you regulate a trespass, you can regulate whatever speech you want. Because once you trespass, you can't do anything. That's rejected by the 10th Circuit and Kelly. It's rejected by the Western Watershed's holding. It's rejected and I think put into a really important context in the Herbert decision, which says if the government could do that, it could say you could criminalize unwanted debates at dinner tables. We don't want to live in that world, and that's the world they're trying to create through this First Amendment argument. If there are no further questions, thank you very much. Thank you.